# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| JOINT LIQUIDATORS OF THREE ARROWS CAPITAL, LTD. (IN LIQUIDATION),<br><br>　　　　　Petitioner,<br><br>　　　　　v.<br><br>ZANE TACKETT,<br><br>　　　　　Respondent. | Case No. |

## THE JOINT LIQUIDATORS OF THREE ARROWS CAPITAL, LTD.'S MOTION FOR ORDER AUTHORIZING SUBSTITUTED SERVICE OF SUBPOENA ON ZANE TACKETT

To the Honorable United States District Judge:

　　　　1.　　Russell Crumpler and Christopher Farmer, in their joint capacities as the duly authorized joint liquidators (the "Joint Liquidators") appointed in the British Virgin Islands' ("BVI") liquidation of Three Arrows Capital, Ltd. (in liquidation) (the "3AC Debtor") and foreign representatives of the 3AC Debtor, as recognized pursuant to chapter 15 of the Bankruptcy Code in the case captioned *In re Three Arrows Capital, Ltd.*, Case No. 22-10920 (MG) (Bankr. S.D.N.Y. 2022), respectfully submit this motion (the "Motion") seeking entry of an order granting authorization to serve a subpoena upon Zane Tackett via substituted service.[1]

---

[1] To the Joint Liquidators' knowledge, Mr. Tackett is not represented by counsel. Because Mr. Tackett is travelling internationally with no specified return date, the Joint Liquidators have not been able to meet and confer with Mr. Tackett in advance of the filing of this Motion pursuant to D.C. Colo. LCivR. 7.1(a).

2. In support of the Motion, the Joint Liquidators rely upon (a) Proof of Service dated November 20, 2024, *see* Ex. C; (b) Delivery Notice from FedEx dated November 13, 2024, *see* Ex. B to Ikeda Decl.; (c) the Declaration of Tiffany M. Ikeda ("Ikeda Decl."); and (d) the Declaration of Hailey Weng ("Weng Decl."). In further support of the relief requested herein, the Joint Liquidators respectfully submit:

## BACKGROUND

1. The underlying dispute involves two debtors, the 3AC Debtor and FTX Trading Ltd., who have each been undergoing insolvency proceedings for over two years.

2. The 3AC Debtor was incorporated in the BVI and operated a hedge fund with a focus on trading and investing in cryptocurrency and other digital assets. The 3AC Debtor's business collapsed in May and June 2022 in the wake of extreme fluctuations in the cryptocurrency markets. On June 27, 2022, it commenced a liquidation proceeding (the "BVI Proceeding") before the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division), and that court issued an order appointing Russell Crumpler and Christopher Farmer as the Joint Liquidators of the 3AC Debtor.

3. On July 1, 2022, the Joint Liquidators, acting as the foreign representatives of the 3AC Debtor, commenced Chapter 15 proceedings before the United States Bankruptcy Court for the Southern District of New York (*In re Three Arrows Capital Ltd.*, Case No. 22-10920 (MG) (Bankr. S.D.N.Y.)). On July 28, 2022, that court granted recognition of the 3AC Debtor's foreign main proceeding pending in the BVI.

3. On November 11, 2022, FTX Trading Ltd. and its debtor affiliates (the "FTX Debtors") filed for Chapter 11 in the United States Bankruptcy Court for the District of Delaware, Case No. 22-11068 (JTD).

2

4. On June 30, 2023, the 3AC Debtor filed proofs of claim in the FTX Debtors' Chapter 11 cases, asserting, inter alia, claims for preference, conversion, and other avoidance actions under BVI, New York, Delaware, and other applicable law, as well as other claims, whether known or unknown, based on acts, omissions, and transactions between the 3AC Debtor, FTX, and FTX's affiliated Debtors. ("3AC Original Proofs of Claim"). These included claims relating to a purported $120 million loan owed by the 3AC Debtor to FTX that was apparently satisfied approximately two weeks before the 3AC Debtor's liquidation proceedings began.

5. At the time of the filing of the Original Proofs of Claim, the Joint Liquidators had access to extremely limited information concerning the relationship between the 3AC Debtor and FTX. Indeed, the Joint Liquidators faced extensive challenges obtaining documents and information necessary to conduct a comprehensive evaluation of the 3AC Debtor's claims against FTX and other entities. These challenges were due to the destruction or other loss of the 3AC Debtor's books and records, and the complete failure of the 3AC Debtor's founders—who maintained day-to-day control over the 3AC Debtor prior to its collapse—to meaningfully cooperate with the Joint Liquidators. As just one example, when the Joint Liquidators gained access to the 3AC Debtor's offices in Singapore, they found that hard drives had been removed from desktop computers, and that the offices contained no laptops and very few other records. The Joint Liquidators essentially had no books and records, emails, or employees (former or current) to consult. As a result, the Joint Liquidators could only tediously recreate the 3AC Debtor's books and records from whole cloth, including through the pursuit of discovery from numerous parties in multiple jurisdictions.

6. To remedy their information deficit, the Joint Liquidators embarked on a lengthy discovery process and ultimately obtained various documents after the filing of the Original Proofs

3

of Claim that were until then in FTX's possession. That discovery, which was previously unknown to the 3AC Debtor, revealed in the summer of 2024 that the preference, conversion, and other avoidance actions cited in the Original Proofs of Claim are not limited to the apparent satisfaction of a $120 million loan owed to FTX. Rather, they are based on the liquidation, between June 12 and June 15, 2022 (*i.e.*, approximately **two weeks** before the 3AC Debtor's liquidation proceedings began), by or for the benefit of FTX, of approximately $1.53 billion in the 3AC Debtor's assets in satisfaction of approximately $1.3 billion in alleged liabilities to FTX. The discovery also revealed facts showing that the 3AC Debtor has viable breach of contract, breach of trust, proprietary restitution, turnover, and unjust enrichment claims against FTX based on the same transaction.

7. On July 8, 2024, the FTX Debtors filed the *Debtors' Objection to Proof of Claim Filed by the Joint Liquidators of Three Arrows Capital Ltd.* [D.I. 19797],[2] seeking an order that the claims asserted in the 3AC Original Proofs of Claim should be disallowed and expunged.

8. On November 6, 2024, the 3AC Debtor filed the *Motion of the Joint Liquidators of Three Arrows Capital, Ltd. (In Liquidation) for Leave to Amend Proof of Claim* [D.I. 27755] (the "Motion to Amend"), requesting authorization to amend the 3AC Debtor's Original Proofs of Claim to assert liquidated and non-contingent claims of approximately $1.53 billion based on information obtained through diligent discovery and investigation. FTX has indicated that it intends to oppose the Motion to Amend, and a hearing on the Motion to Amend is currently scheduled for December 12, 2024.

9. Based on discovery conducted to date—including documents produced by the FTX Debtors and the deposition of the FTX Debtors' 30(b)(6) corporate representative—the Joint

---

[2] The docket entries refer to the docket in *In re FTX Trading Ltd. et al.*, Case No. 22-11068 (JTD) (Bankr. D. Del.).

Liquidators learned that Zane Tackett has critical information relating to the relationship between FTX and the 3AC Debtor, including information relating to the 3AC Debtor's claims. Mr. Tackett is the former Head of Institutional Sales at FTX Trading and played a key role in managing FTX's relationship with the 3AC Debtor; given his role and documents produced to date, Mr. Tackett likely has unique insight into the 3AC Debtor's account at FTX as he was personally involved in the events in June 2022 surrounding the liquidation of the 3AC Debtor's assets. Additionally, FTX identified Mr. Tackett as a person "likely to have personal knowledge relating to the business relationship between 3AC and the [FTX] Debtors" in its interrogatory responses. Ex. A to Ikeda Decl., 10.

10. Accordingly, the Joint Liquidators prepared the *Subpoena to Testify at a Deposition in a Bankruptcy Case (or Adversary Proceeding)* (the "Subpoena") to be served on Mr. Tackett at his last known address, which had been provided to the Joint Liquidators by the FTX Debtors. That subpoena sought key information, including communications between Mr. Tackett and the 3AC Debtor (including the 3AC Debtor's Founders), information relating to the 3AC Debtor's accounts or transactions with FTX, and agreements between the 3AC Debtor and FTX, as well as a deposition in Denver, approximately 25 miles from Mr. Tackett's residence. *See* Ex. A to Weng Decl.

11. The 3AC Debtor attempted to personally serve Mr. Tackett with the Subpoena on four separate occasions:

    a. On November 12, 2024, a process server attempted personal service at Mr. Tackett's residence, 5229 County Road 5, Erie, CO 80516. Bryan Kanaday, who is Mr. Tackett's step father answered the door. The process server spoke to Mr. Kanaday, who said Mr. Tackett was in Thailand and he had no idea when

5

        Mr. Tackett would be returning home. *See* Weng Decl. ¶ 1. That same day, the 3AC Debtor also mailed the Subpoena, enclosing a check for witness fee and mileage, to Mr. Tackett's residence via FedEx overnight delivery. FedEx delivered the Subpoena at Mr. Tackett's residence the next day, and Mr. Kanaday signed for the delivery. *See* Ex. B to Ikeda Decl.

b. On November 13, a process server visited Mr. Tackett's residence at 7:54 am and attempted to serve the *Notice of Intent to Serve Subpoena on Zane Tackett* (the "Notice"), Ex. B to Weng Decl., attaching the Subpoena, on Mr. Kanaday. No one answered the door. *See* Weng Decl. ¶ 2.

c. On November 16, a process server returned to Mr. Tackett's residence and attempted service again—this time in the evening—but no one answered the door. *See* Weng Decl. ¶ 3.

d. Finally, on the evening of November 18 at 7:10 pm, a process server visited Mr. Tackett's residence and succeeded serving the Notice on Mr. Kanaday. *See* Weng Decl. ¶ 4; Ikeda Decl. ¶ 6; Ex. C.

## ARGUMENT

12.     Fed. R. Civ. P. Rule 45(b)(1) governs the service of a subpoena and provides that "[s]ervice of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person . . . " The rule neither expressly requires personal service nor expressly precludes substituted service. Rather, it only requires that a copy of the subpoena be "delivered" to the person named. *See, e.g.*, *Cordius Trust v. Kummerfeld*, 2000 WL 10268, *2 (S.D.N.Y. Jan. 3, 2000) (holding "effective service under Rule 45 is not limited to personal service"); *In re Procom Am., LLC*, 638 B.R. 634 (Bankr. M.D. Fla. 2022) ("[A]s have many other courts . . . nothing in the language of Rule 45 requires personal service. Instead, Rule 45 only requires delivery of a

6

subpoena.") (internal citations omitted); *In re Falcon Air Express, Inc.*, 2008 WL 2038799 at *2 (Bankr. S.D. Fla. May 8, 2008) ("Nothing in the language of Rule 45 requires personal service, nor is there any mention of personal service."); *Ice Corporation v. Hamilton Sundstrand Corporation*, 2007 WL 1364984, *3 (D. Kan. 2007) (stating "personal service of the subpoena under Rule 45 is not necessarily required"); *Ultradent Prods., Inc v. Hayman*, 2002 WL 31119425 at *3-4 (S.D.N.Y. Sept. 24, 2002) (service of subpoena on third party witness by certified mail sufficient to satisfy Rule 45); *King v. Crown Plastering Corp.*, 170 F.R.D. 355, 356 (E.D.N.Y. 1997) (holding delivery of subpoena to witness's residence and mailing to residence were sufficient to effectuate service); *Doe v. Hersemann*, 155 F.R.D. 630 (N.D. Ind. 1994) (holding service of subpoena by certified mail was sufficient); *Green v. Baca*, 2005 WL 283361, at * 1 n.1 (C.D. Cal. Jan. 31, 2005) (holding service of subpoenas by leaving them at various witnesses' offices was sufficient).

13. But even if Rule 45 requires personal service, courts have still allowed alternative service by motion and upon a proper showing. *See, e.g.*, *Williams v. Lowe's Companies, Inc.*, 2019 WL 13473875 (D. Colo. Nov. 7, 2019) (allowing substituted service of the deposition subpoena when defendants "have employed due diligence in attempting to effect personal service on the witness"); *SEC v. Pence*, 322 F.R.D. 450 (S.D.N.Y. 2017) (holding substituted service of a subpoena ad testificandum by e-mail, fax, certified mail, and telephone call with voicemail message, was appropriate).

14. Courts will allow substituted service if it is "reasonably calculated" to ensure receipt of the subpoena by the deponent. *See In re Viacao Itapemirim, S.A.*, 608 B.R. 268 at 273 (Bankr. S.D. Fla. 2019) (holding substituted service was effective "as reasonably calculated to ensure receipt of the subpoena by the deponent" and noting "courts have found substitute service

7

to be effective when the subpoena is served on the housekeeper of a deponent or on a relative of a deponent"); *Cordius Trust*, 2000 WL 10268 at *2 (holding "alternative service by means of certified mail reasonably insures actual receipt of the subpoena by the witness" and "comports with due process as it is reasonably calculated under the circumstances to provide Kummerfeld with both notice and an opportunity to present objections.").

15.     Specifically, courts have found that mailing the subpoena to the deponent's residence and leaving a copy of the subpoena at the deponent's residence with a person of suitable age and discretion are sufficient to effectuate substituted service. *See, e.g.*, *In re Falcon Air Express, Inc.*, 2008 WL 2038799 at *2 (holding service of deposition subpoena on deponent's wife satisfies Rule 45); *JPMorgan Chase Bank, N.A. v. IDW Group, LLC*, 2009 WL 1313259 (S.D.N.Y. 2009) (granting substituted service of deposition subpoena by sending a copy of the subpoena by certified mail and leaving a copy of the deposition subpoena at the deponent's residence and place of business with a person of suitable age and discretion after multiple attempts at personal service); *Cordius Trust*, 2000 WL 10268, at *2 ("[G]iven the textual ambiguity of Rule 45 combined with the repeated attempts of the plaintiff to effectuate personal service, and the cost and delay that would result by requiring further attempts at such service, plaintiff is permitted to serve Kummerfeld by certified mail.").

16.     In this case, substituted service is appropriate for Mr. Tackett under Fed. R. Civ. P. 45 for several reasons.

17.     *First*, the Joint Liquidators have diligently attempted to personally serve Mr. Tackett four times. All of the process server's attempts to personally serve Mr. Tackett have been unsuccessful, and Mr. Tackett's stepfather explained that Mr. Tackett is out of the country and he does not know when he will be returning. *See* Ex. C. Moreover, Mr. Tackett does not appear to

8

have an authorized agent for service, and Mr. Kanaday, Mr. Tackett's stepfather who also resides at Mr. Tackett's residence, accepted the subpoena. *See id.* The Joint Liquidators' efforts at service meet the standard for diligence. *See, e.g.*, *Williams v. Lowe's Companies, Inc.*, 2019 WL 13473875 (D. Colo. Nov. 7, 2019) (allowing substituted service of the deposition subpoena when defendants "have employed due diligence in attempting to effect personal service on the witness").

18. *Second*, the substituted service of subpoena through Mr. Kanaday is reasonably calculated to provide Mr. Tackett of actual notice of his deposition subpoena. *See In re Falcon Air Express, Inc.*, 2008 WL 2038799 at *2 (holding service of subpoena on deponent's wife "was reasonably calculated to [e]nsure receipt of the subpoena by the witness" who "may not have resided there at that time"). Mr. Kanaday is a person of suitable age and discretion who lives at the same residence as Mr. Tackett.

19. *Furthermore*, mailing the subpoena to Mr. Tackett's residence is also reasonably calculated to provide Mr. Tackett of actual notice of his deposition subpoena. *See Cordius,* 2000 WL 10268, at *2 ("Because alternative service by means of certified mail reasonably [e]nsures actual receipt of the subpoena by the witness, the 'delivery' requirement of Rule 45 will be met."); *JPMorgan Chase Bank, N.A.*, 2009 WL 1313259 at *3 (same).

20. *Finally*, further attempts at personal service of Mr. Tackett are unlikely to succeed because Mr. Kanaday informed the process server that Mr. Tackett was travelling internationally in Thailand with no specified return date.

21. Therefore, based on the foregoing, the Joint Liquidators respectfully request that this Court issue an order permitting substituted service on Mr. Zane Tackett either by delivery of the subpoena at his residence via FedEx, or by leaving the subpoena with his stepfather Mr. Bryan Kanaday at Mr. Tackett's residence, or both.

## **CONCLUSION**

22. For the foregoing reasons, the Joint Liquidators respectfully request that the Court grant the Joint Liquidators' Motion for Substituted Service on Zane Tackett, and deem the service of the subpoena duces tecum upon Zane Tackett that is effected by FedEx, and/or service of the Notice of Intent to Serve Subpoena on Zane Tackett on Bryan Kanaday, sufficient to satisfy the requirements of Fed. R. Civ. P Rule 45.

Dated: December 5, 2024
Los Angeles, California

*/s/ Joshua Hamilton*

Joshua Hamilton
California State Bar # 199610
**LATHAM & WATKINS LLP**
10250 Constellation Blvd. Suite 1100
Los Angeles, CA 90067
Telephone: (424) 653-5500
Facsimile: (424) 653-5501
Email: joshua.hamilton@lw.com

*Counsel to the Joint Liquidators*
*of Three Arrows Capital, Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2024, I caused a true and correct copy of the foregoing to be served upon Zane Tackett, as of this date by U.S. mail to the following address:

Zane Tackett
5229 COUNTY ROAD 5
Erie, CO 80516

I hereby certify that on December 5, 2024, I caused a true and correct copy of the foregoing to be served upon the parties listed on the Electronic Mail Notice List.

By: _____

Tiffany M. Ikeda
California State Bar # 280083
**LATHAM & WATKINS LLP**
10250 Constellation Blvd. Suite 1100
Los Angeles, CA 90067
Telephone: (424) 653-5500
Facsimile: (424) 653-5501
Email:   tiffany.ikeda@lw.com

*Counsel to the Joint Liquidators
of Three Arrows Capital, Ltd.*

11

**ELECTRONIC MAIL NOTICE LIST**

- gluecksteinb@sullcrom.com

- bellerb@sullcrom.com;

- lius@sullcrom.com;

- darbys@sullcrom.com

- keeleyj@sullcrom.com

- landis@lrclaw.com

- brown@lrclaw.com

- pierce@lrclaw.com

- jkochenash@ycst.com

- mlunn@ycst.com

- rpoppiti@ycst.com

- erezgilad@paulhastings.com

- gabesasson@paulhastings.com

- krishansen@paulhastings.com

- linda.richenderfer@usdoj.gov

- benjamin.a.hackman@usdoj.gov

- jon.lipshie@usdoj.gov

- David.Gerardi@usdoj.gov