**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

|  |  |
|---|---|
| JOINT LIQUIDATORS OF THREE ARROWS CAPITAL, LTD. (IN LIQUIDATION),<br><br>Petitioner,<br><br>v.<br><br>ZANE TACKETT,<br><br>Respondent. | Case No. 1:24-mc-00121 (CNS)(STV) |

**THE FTX RECOVERY TRUST'S OPPOSITION**
**TO THE JOINT LIQUIDATORS OF THREE ARROWS CAPITAL, LTD.'S**
**AMENDED MOTION FOR ORDER AUTHORIZING SUBSTITUTED**
**SERVICE OF SUBPOENA ON ZANE TACKETT**

The FTX Recovery Trust[1] hereby submits this opposition (the "Opposition") to *The Joint Liquidators of Three Arrows Capital, Ltd.'s Amended Motion for Order Authorizing Substituted Service of Subpoena on Zane Tackett*, Docket No. 5 (the "Motion"). This proceeding and the discovery that the Joint Liquidators seek from Mr. Tackett arise out of a dispute between the Joint Liquidators and the FTX Recovery Trust (which was transferred the FTX Debtors' interests) described further below. Mr. Tackett is a former employee of the FTX entities prior to the commencement of the chapter 11 cases. Accordingly, the FTX Recovery Trust has a direct interest in this proceeding. In support of its Opposition, the FTX Recovery Trust respectfully states as follows:

---

[1] The FTX Recovery Trust (a/k/a the Consolidated Wind Down Trust) was established through the confirmed *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [D.I. 26404] of FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "FTX Debtors" or "FTX") in the Chapter 11 bankruptcy proceedings currently pending in the United States Bankruptcy Court for the District of Delaware, *In re FTX Trading Ltd., et al.*, No. 22-11068 (JTD) (the "FTX Bankruptcy Proceedings"), which became effective on January 3, 2025 [D.I. 29127].

**PRELIMINARY STATEMENT**

1. The present Motion requesting substituted service should be denied on two independent grounds: (i) the request is premature until the Delaware Bankruptcy Court rules on the Motion to Amend and the scope of the claims dispute between the FTX Recovery Trust and the Joint Liquidators is determined, and (ii) the Joint Liquidators have not demonstrated due diligence in attempting personal service, and the proposed substituted service is inappropriate under the circumstances and not reasonably calculated to give Mr. Tackett actual notice. In the alternative, the Motion should be transferred to the Delaware Bankruptcy Court for consideration in the context of the FTX Bankruptcy Proceedings.

**BACKGROUND**

2. Three Arrows Capital, Ltd. ("3AC"), a cryptocurrency and digital assets hedge fund that has been in court-supervised liquidation since July 2022, maintained certain customer accounts on the FTX.com exchange (collectively, the "3AC Accounts") before the FTX Debtors filed for bankruptcy on November 11 and 14, 2022.

3. On June 30, 2023, the joint liquidators of 3AC (the "Joint Liquidators") filed identical proofs of claim (the "Original Proofs of Claim") on behalf of 3AC against each of the FTX Debtors in connection with the "purported foreclosure by the FTX Debtors on collateral securing an approximately $120 million purported loan that [3AC] owed to the FTX Debtors as of June 1, 2022." *See Declaration of Benjamin S. Beller in Support of Debtors' Objection to the Motion of the Joint Liquidators of Three Arrows Capital, Ltd. (In Liquidation) for Leave to Amend Proof of Claim*, Ex. O, *In re FTX Trading Ltd., et al.*, No. 22-11068 (JTD), Docket No. 28660 (Bankr. D. Del. Dec. 10, 2024) (redacted).

4. On July 8, 2024, the FTX Debtors filed the *Debtors' Objection to Proofs of Claim Filed by the Joint Liquidators of Three Arrows Capital, Ltd.*, objecting to the Original

-2-

Proofs of Claim on the grounds that they failed to adequately articulate any cognizable claims entitled to *prima facie* validity. *See In re FTX Trading Ltd., et al.*, No. 22-11068 (JTD), Docket No. 19797 (Bankr. D. Del. July 8, 2024).

5. On November 6, 2024, the Joint Liquidators moved in the FTX Bankruptcy Proceedings for leave to amend the Original Proofs of Claim (the "Motion to Amend") in order to assert new claims against the FTX Debtors for the vast majority of the total value of all cryptocurrency assets held in the 3AC Accounts as of the end of June 12, 2022 (approximately $1.53 billion), including those not implicated by any "foreclosure" initiated by the FTX Debtors. *See Notice of Filing of Redacted Version of Motion of the Foreign Representatives of Three Arrows Capital, Ltd. (in Liquidation) for Leave to Amend Proof of Claim*, *In re FTX Trading Ltd., et al.*, No. 22-11068 (JTD), Docket No. 27755 (Bankr. D. Del. Nov. 6, 2024) (filed under seal); *id.* at Docket No. 27901 (Bankr. D. Del. Nov. 12, 2024) (redacted).

6. The FTX Debtors filed their objection to the Motion to Amend on December 5, 2024, and the Joint Liquidators filed their reply on December 9, 2024.

7. The Joint Liquidators' Motion to Amend was heard by the Delaware Bankruptcy Court in an evidentiary hearing held on December 12, 2024. The Delaware Bankruptcy Court took the Motion to Amend under advisement, and has not issued a decision on the Motion to Amend as of the filing of this Opposition.

## ARGUMENT

I. **The Motion Requesting Substituted Service Should be Denied.**

   A. **The Motion Requesting Substituted Service is Premature Until the Delaware Bankruptcy Court Rules on the Motion to Amend.**

8. The Motion is premature because the Joint Liquidators have not received leave to assert the New Claims and therefore the scope of the dispute between the FTX Recovery

-3-

Trust and the Joint Liquidators is uncertain. Discovery is premature and need not be authorized by the Court when it relates to potential substantive claims that may be barred as the result of a pending dispositive motion. *See Sanchez* v. *Hartley*, 2016 WL 7176718, at *2 (D. Colo. Apr. 26, 2016) ("proceeding with discovery would be premature until the court had a better sense of the claims, if any, that might survive a ruling on the pending motion to dismiss"); *Johnson* v. *Lappin*, 2011 WL 1675193, at *2 (D. Colo. May 3, 2011) ("To the extent that [plaintiff] seeks discovery, such request is premature at this stage of the litigation, particularly in light of the pending Recommendation of United States Magistrate Judge [that would dismiss the complaint]."); *Faith Satellite Radio, LLC* v. *Lutheran Church Missouri Synod*, 2010 WL 3909467, at *1 (D.D.C. Oct. 4, 2010) ("[E]fforts to obtain discovery from any source are premature" when a motion to dismiss was pending and the parties had not agreed to conduct discovery prior to the issuance of a scheduling order). Discovery is also premature when the relevance of the discovery sought depends on events that remain uncertain. *See Indep. Inst.* v. *Gessler*, 2013 WL 2556862, at *2 (D. Colo. June 11, 2013) ("Because the relevance of Defendant's records is contingent upon events that remain uncertain, the Court determines that the pending discovery request is premature").

9. The requested discovery from Mr. Tackett is thus premature until the Motion to Amend is resolved. The scope and nature of the Joint Liquidators' potential claims against the FTX Recovery Trust will depend on the outcome of the Motion to Amend. The Original Proofs of Claim assert claims arising from the foreclosure on collateral securing a specific $120 million purported loan by the FTX Debtors to 3AC. By contrast, the New Claims assert arbitrary claims against the FTX Recovery Trust for the vast majority of the total value of ***all*** cryptocurrency assets held in the 3AC Accounts as of the end of June 12, 2022 (approximately $1.53 billion), including those not implicated by any "foreclosure" initiated by the FTX Debtors.

The New Claims are premised on new alleged facts wholly absent from the Original Proofs of Claim. The FTX Recovery Trust disputes the propriety of amendment on multiple grounds, including that the applicable standards for late amendment have not been met and that it would be inequitable to grant leave at this late stage of the FTX Bankruptcy Proceedings.

10. Until such time as the Motion to Amend is decided, it remains uncertain (1) which of the Joint Liquidators' proofs of claim will become the operative claims against the FTX Recovery Trust; and (2) the appropriate scope of any related merits discovery, including any discovery that may be sought from Mr. Tackett. No litigation and discovery schedule has been entered for the claims that the Joint Liquidators would seek in connection with their potential claims against the FTX Recovery Trust. It is therefore premature for the Joint Liquidators to seek authorization to serve a subpoena upon Mr. Tackett via substituted service.

### B. The Proposed Substituted Service Is Inappropriate.

11. The Court should also deny the Motion because the Joint Liquidators have failed to demonstrate that their proposed means of alternative service is reasonably calculated to give Mr. Tackett notice. Under Colorado law, "the default method of service is '*personal service.*'" *Penn-Star Ins. Co.* v. *Bus. Futures, Inc.*, 2021 WL 5071822, at *3 (D. Colo. Sept. 14, 2021). It is only when "service of process by personal service cannot be accomplished" that "other means of service may be used." *United States* v. *Elsberg*, 2010 WL 5177439, at *3 (D. Colo. Aug. 17, 2010). "When service by mail or publication is not otherwise available, Rule 4(f) provides for substitute service but likewise requires the serving party to file a motion requesting substitute service that demonstrates the serving party's due diligence in attempting to serve the identified party. To accord with the Due Process Clause of the United States Constitution, Rule 4(f) requires a plaintiff to demonstrate that substituted service 'is appropriate under the circumstances and reasonably calculated to give actual notice to the defendant.'" *Matthews* v. *Candie*, 2020 WL

3487850, at *2 (D. Colo. June 26, 2020) (quoting *Willhite* v. *Rodriguez-Cera*, 2012 CO 29, ¶ 26, 274 P.3d 1233, 1240-41 (Colo. 2012) (quoting Colo. R. Civ. P. 4(f))). Importantly, to demonstrate due diligence, the serving party must show that "further attempts to obtain [personal service] would be to no avail." Colo. R. Civ. P. 4(f).

12. Here, the Joint Liquidators have not sufficiently demonstrated their due diligence in attempting to serve Mr. Tackett. While the Boker Declaration, Gaytan Declaration, and Olds Declaration submitted in support of the Motion describe unsuccessful attempts to serve Mr. Tackett at an address in Erie, Colorado, those declarations "make[] no factual allegations suggesting that [Mr. Tackett] is in fact avoiding service, rather than simply not at home at the times service was attempted." *Colony Ins. Co.* v. *Bristlecone Montessori Sch.*, 2021 WL 50893, at *3 (D. Colo. Jan. 5, 2021) (denying motion for substituted service because the court was "not convinced that further efforts to effect personal service on [the defendant] would be to no avail").

13. At the time of the first attempt, Mr. Tackett's stepfather informed the process server that Mr. Tackett was in Thailand. (Boker Decl. ¶ 1.) At another attempt, the process server did not see anyone matching Mr. Tackett's description at the address. (Gaytan Decl. ¶ 3.) At the last attempt, the process server was again informed that Mr. Tackett was "currently out of the country." (Olds Decl. ¶ 2.) Moreover, the fact that the Joint Liquidators only attempted service at *one* address, despite multiple unsuccessful attempts at service at that address, is insufficient to demonstrate due diligence. *See Elide Fire USA, LLC* v. *Auto Fire Guard, LLC*, 2021 WL 4947287, at *4 (D. Colo. Sept. 14, 2021) ("Although service was apparently attempted multiple times at this address, this is nevertheless insufficient to demonstrate due diligence" when "[i]t does not appear that Plaintiff has attempted to serve [the defendant] at any other address"); *Allstate Ins. Co.* v. *Cruz*, 2020 WL 7421389, at *2 (D. Colo. Nov. 18, 2020) ("Allstate's apparent attempts to serve

Mr. Cruz at only one residential address also do not warrant the somewhat extraordinary measure of allowing service on someone expressly not authorized to accept service."). Courts generally find that the due-diligence requirement has been satisfied when a party has made multiple attempts at service at *multiple* addresses. *See, e.g.*, *Malone* v. *Highway Star Logistics, Inc.*, 2009 WL 2139857, at *2 (D. Colo. July 13, 2009) (due diligence satisfied where personal service was attempted at five different addresses); *BMO Harris Bank N.A.* v. *Marjanovic*, 2020 WL 4705294, at *1 (D. Colo. Aug. 13, 2020) (plaintiff employed due diligence by attempting service at four different addresses).

14. Moreover, the Joint Liquidators fail to establish that the proposed method of substituted service—(1) by delivery of the subpoena at Mr. Tackett's residence via FedEx, or (2) leaving the subpoena with Mr. Kanaday, Mr. Tackett's stepfather—is appropriate under the circumstances and reasonably calculated to give actual notice to Mr. Tackett.

15. *First*, by its plain language, Colo. R. Civ. P. 4(f) does not authorize delivery of the subpoena via FedEx **on its own** as an appropriate method for substituted service. *See Willhite* v. *Rodriguez-Cera*, 2012 CO 29, ¶ 24, 274 P.3d 1233, 1240 (Colo. 2012) ("If process is never delivered to the substituted person, service can never be valid and complete under C.R.C.P. 4(f).").

16. *Second*, the Joint Liquidators have not demonstrated that service upon Mr. Kanaday is reasonably calculated to give actual notice to Mr. Tackett. According to the Boker Declaration, Mr. Kanaday informed the process server that "he had no idea when Mr. Tackett would be returning home." (Boker Decl. ¶ 1.) It cannot be presumed that leaving the subpoena with Mr. Kanaday would result in actual notice to Mr. Tackett. *Matthews*, 2020 WL 3487850, at *3 (denying motion for substituted service by serving the sister and/or mother of [the defendant's]

registered agent when there are no allegations that the registered agent "resides with them or regularly visits them"); *see also Minshall* v. *Johnston*, 2018 CO 44, ¶ 28, 417 P.3d 957, 962 (Colo. App. 2018) (concluding that Rule 4(f) is not satisfied merely by alleging that the designated person for substitute service will notify the party to be served of the suit, but rather by demonstrating through evidence that service on the designated person is "reasonably calculated to give actual notice" of the suit to the defendant).

17. If the Joint Liquidators' efforts were sufficient to warrant substitute service, such accommodations would become commonplace. The law is the opposite: substituted service should only be authorized in rare circumstances where personal service cannot be accomplished following a diligent effort to so. *See* Colo. R. Civ. P. 4(f); *see also Greene* v. *JJLV LLC*, 2021 WL 5280190, at *2 (D. Colo. Nov. 12, 2021) (denying motion for substituted service when the court "is not satisfied that Plaintiff has exercised sufficient 'due diligence' in his attempts to effect personal service").

## II.     In the Alternative, the Motion Should be Transferred to the Delaware Bankruptcy Court.

18. In the alternative, the Court should transfer the Motion to the Delaware Bankruptcy Court on the grounds of "exceptional circumstances" under Federal Rule of Civil Procedure 45(f). "Courts applying Rule 45(f) routinely refer to the 2013 [Advisory Committee] Note's language in determining its scope." *US Plywood Integrity Coal.* v. *PFS Corp.*, 2021 WL 409968, at *2 (W.D. Wash. Feb. 5, 2021) (collecting cases). With regard to transfer upon a finding of exceptional circumstances, the 2013 Advisory Committee Note states that "transfer may be warranted in order to ***avoid disrupting the issuing court's management of the underlying litigation***, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." 2013 Advisory Committee Note (emphasis

added).  "When considering if exceptional circumstances are present, the Court must account for the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation."  *Schell* v. *Amendia, Inc.*, 2021 WL 1541712, at *3-*4 (D. Colo. Apr. 20, 2021) (quotation omitted) (granting transfer and reasoning that "[the Judge for the underlying case] has intimate knowledge of the complex matters at issue in the underlying litigation" and "will be able to more quickly and efficiently resolve the instant Motion and thus avoid or limit disruption to the current schedule in the Underlying Litigation").

19.     The exceptional nature of the FTX Bankruptcy Proceedings—including the scale of asserted claims and parties impacted by which claims may be asserted—justify directing discovery disputes around creditor recovery to the Delaware Bankruptcy Court.  The FTX Bankruptcy Proceedings have involved more than 29,000 filings spanning more than two years.  There have been more than 95,000 customer entitlement claims and more than 2,500 non-customer entitlement claims filed in these proceedings, originally seeking an amount exceeding $1.187 sextillion.  *See Motion of Debtors for Entry of an Order Establishing the Amount of the Disputed Claims Reserve*, ¶ 8, *In re FTX Trading Ltd., et al.*, No. 22-11068 (JTD), Docket No. 28102 (Bankr. D. Del. Nov. 20, 2024).  The proceedings have long received intense public attention.  Through the Motion to Amend, the Joint Liquidators seek to introduce New Claims for an amount exceeding $1.5 billion, after the Delaware Bankruptcy Court has already confirmed the FTX Debtors' plan of reorganization.  Claims asserted by one creditor (like the Joint Liquidators) impact the recovery available to the other creditors of the FTX Recovery Trust.  And the Joint Liquidators and the FTX Debtors have already submitted detailed briefing in connection with the Motion to Amend, including to address the discovery record.  Whereas this Court has not yet been involved in the

FTX Bankruptcy Proceedings, the Delaware Bankruptcy Court has developed unique experience and knowledge through managing those proceedings over the last two years. Decisions regarding what further discovery should or should not be permitted, and the propriety of alternative service on a former FTX employee, are best suited for the Delaware Bankruptcy Court, which has the benefit of the full picture. This context presents the type of exceptional circumstances that support a transfer of this Motion.

## **RESERVATION OF RIGHTS**

20. This Opposition is limited to the grounds stated herein. The FTX Recovery Trust expressly reserves all further substantive or procedural objections to the Motion.

## **CONCLUSION**

21. For the foregoing reasons, the FTX Recovery Trust respectfully requests that the Court enter an order denying the Motion or, in the alternative, an order transferring the Motion to the FTX Bankruptcy Proceedings.

Dated: January 24, 2025
New York, New York

**SULLIVAN & CROMWELL LLP**

*/s/ Brian D. Glueckstein*
Brian D. Glueckstein
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: gluecksteinb@sullcrom.com

*Counsel for the FTX Recovery Trust*