**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 24–mc–00121-CNS-STV

JOINT LIQUIDATORS OF THREE ARROWS CAPITAL, LTD.,

    Petitioner,

v.

ZANE TACKETT,

    Respondent.

_____

**ORDER**
_____

Chief Magistrate Judge Scott T. Varholak

    This matter is before the Court on Petitioner's Amended Motion for Substituted Service of a Subpoena on Respondent Zane Tackett (the "Motion") [#5], which was referred to this Court [#6].  Through the Motion, Petitioner requests that the Court permit substituted service for Respondent Zane Tackett pursuant to Federal Rule of Civil Procedure 45(b)(1). [#5]  For the following reasons, the Motion is **DENIED WITHOUT PREJUDICE**.[1]

**I.    BACKGROUND**

    The underlying dispute involves the insolvency proceedings of two entities: Three Arrows Capital, Ltd. ("3AC Debtor") and FTX Trading Ltd. ("FTX Debtors").  [#5 at ¶ 1]  The 3AC Debtor, a hedge fund incorporated in the British Virgin Islands ("BVI") that

focused on cryptocurrency and digital asset investments, collapsed in May and June 2022 during significant volatility in cryptocurrency markets.  [*Id*. at ¶ 2]  On June 27, 2022, the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division) commenced liquidation proceedings for the 3AC Debtor.  [*Id*.]  On July 1, 2022, the Joint Liquidators initiated Chapter 15 proceedings in the United States Bankruptcy Court for the Southern District of New York, seeking recognition of the 3AC Debtor's foreign main proceeding in the BVI (Case No. 22-10920 (MG)).  [*Id*. at ¶ 3]  Recognition was granted on July 28, 2022.  [*Id*.]

Zane Tackett, the former Head of Institutional Sales at FTX Trading, is believed to have critical information regarding the relationship between FTX and the 3AC Debtor, including events surrounding the liquidation of 3AC Debtor's assets.  [*Id*. at ¶ 10]  The Joint Liquidators prepared a subpoena for Mr. Tackett, seeking documents and deposition testimony regarding these matters.  [*Id*. at ¶ 11]  Attempts to personally serve the subpoena at Mr. Tackett's last known address in Erie, Colorado, were unsuccessful, as Mr. Tackett was reported to be traveling internationally with no known return date.  [*Id*. at ¶ 12]  On November 12, 2024, the subpoena was mailed to Mr. Tackett's residence, where it was received and signed for by his stepfather.  [*Id*.]  Despite further attempts at personal service, the process server was unable to locate Mr. Tackett, although a Notice of Intent to Serve Subpoena was successfully delivered to Mr. Tackett's stepfather on November 18, 2024.  [*Id*.]  On December 31, 2024, a process

---

[1] The Court ordered that Petitioner's first Motion for Substitute Service [#1] be denied on December 12, 2024.  [#4]  That Order should have been framed as a denial under Rule 45.  Accordingly, the Court withdraws the previous Order denying Petitioner's Motion to Substitute Service [#4] and instead issues the foregoing Order in response to both [#1] and [#5] Motions.

server returned to Mr. Tackett's residence to attempt service, and again spoke to Mr. Tackett's stepfather who again said that Mr. Tackett is out of the country. [*Id.*]

Being unable to serve Mr. Tackett in person, Petitioner now seeks authorization to serve him by mailing the subpoena to his verified home address, or by leaving the subpoena with his stepfather at Mr. Tackett's residence. [*Id*. at ¶ 22]

## II.   ANALYSIS

Federal Rule of Civil Procedure 45(b)(1) governs the service of a subpoena and provides that "[s]erving a subpoena requires delivering a copy to the named person." "The longstanding interpretation of Rule 45 has been that personal service of subpoenas is required," although "[i]n recent years a growing number of cases have departed from the view that personal service is required and alternatively have found service of a subpoena under Rule 45 proper absent personal service." 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedures § 2454 (3d ed. updated Apr. 2021). This Court recognizes that there is a split of authority among courts which have ruled on this issue, and that the Tenth Circuit has not yet addressed this question. In fact, both interpretations of Rule 45(b)(1) can be found from courts within this district. *Compare Williams v. Lowe's Companies, Inc.*, No. 17-cv-02564-MEH, 2019 WL 13473875, at *1 (D. Colo. Nov. 7, 2019) ("Under Rule 45(b), then, personal service is expressly required; the rule makes no allowance for service by alternate means."); *with Collins v. Trans Union, LLC*, No. 14-cv-00742-RBJ-NYW, 2015 WL 1932044, at *3-4 (D. Colo. Apr. 28, 2015) (finding certified mail constitutes acceptable service of a subpoena); *and E.A. Renfroe & Co. v. Moran*, No. 08-cv-00732-RPM-KMT, 2008 WL 1815535, at *5-6 (D. Colo. Apr. 18, 2008) ("[E]ffective service under Rule 45 is not

3

limited to hand-to-hand personal service in every case[;] . . . what is mandated is that service be made in a manner which reasonably insures actual receipt of the subpoena. . . . The Federal Rules [of Civil Procedure] should not be construed as a shield for a witness who is purposely attempting to evade service.").

"The rationale for this [latter] minority view is that the language of Rule 45(b)(1) is ambiguous and should be considered in context of Rule 45 as well as other federal rules." *Bank of Oklahoma, N.A. v. Arnold*, No. 06-cv-543-GKF-PJC, 2008 WL 482860, at *3 (N.D. Okla. Feb. 20, 2008) "Reading Rule 45(b)(1) as allowing only personal service of the subpoena would render the statement regarding the 'manner of service' [in Rule 45(b)(4)] superfluous." *Id*. (citing *Western Resources, Inc. v. Union Pacific Railroad Co.*, 2002 WL 1822432 at *2 (D.Kan. July 23, 2002). "Further, if such were the reading, the language of Rule 4(e)(2)(A) requiring that 'delivering' a copy of the summons and complaint be done 'personally' would be pure surplusage." *Id*. "[T]hese courts reason, reading 'delivering' in light of these federal rules militates against restricting that delivery to personal service." *Id*. Nonetheless, for substitute service to be valid, it must comport with due process by being calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Whether a non-party served with a subpoena other than by personal service has been afforded due process depends upon the particular facts of the service. *In re Shur*, 184 B.R. 640, 644 (Bankr. E.D.N.Y. 1995).

Given the facts of this case, the Court need not take a position on whether Rule 45 inherently allows substitute service of a subpoena or not. In those cases where

4

Colorado courts have deemed substitute service of a subpoena permissible under the rule, the determination has been driven by the specific facts of each case.  *See Williams*, 2019 WL 13473875 at *1-2 (finding substitute service permissible despite stating that personal service is expressly required under Rule 45 because: 1) the Court found that the defendants employed due diligence in attempting to effect personal service, and 2) allowing substitute service "facilitate[d] the just, speedy, and inexpensive resolution of th[e] matter, which [was] scheduled for trial [just five months later]"; *Collins*, 2015 WL 1932044 at *4 (finding certified mail constituted acceptable service of a subpoena that notified defendants of plaintiff's intention to serve subpoenas to produce documents, not to appear for a deposition); *E.A. Renfroe & Co.*, 2008 WL 1815535 at *5-6 (finding that service of a subpoena by mail satisfied the delivery requirement of Rule 45 because the service "accomplished the goal of actual receipt of the subpoena by the witness").  As these cases demonstrate, even if this Court were to determine that substitute service is permitted under Rule 45, other threshold requirements must be met before granting a motion for such service.

Here, Petitioner requests that this Court allow substituted service of a subpoena on Mr. Tackett by certified mail to his verified address and by leaving the subpoena with Mr. Tackett's stepfather.  Petitioner claims that this should be permissible because: 1) it has diligently attempted to personally serve Mr. Tackett to no avail  [#5 at ¶ 18]; 2) the substituted service of the subpoena through Mr. Tackett's stepfather is "reasonably calculated to provide Mr. Tackett of actual notice of his deposition subpoena," as the rule requires [*id*. at ¶ 19]; 3) mailing the subpoena to Mr. Tackett's residence is "reasonably calculated to provide Mr. Tackett of actual notice of his deposition

5

subpoena," as the rule requires [*id*. at ¶ 20]; and 4) further attempts at personal service of Mr. Tackett are unlikely to have success because he is traveling internationally with no specified return date [*id*. at ¶ 21]. The Court addresses each argument in turn.

### A. Due Diligence

Petitioner claims that the Court should allow substitute service in this case because it has diligently attempted to personally serve Mr. Tackett without success. [*Id*. at ¶ 18] Specifically, Petitioner has tried to serve the subpoena on Mr. Tackett five times over two months at one address; despite being told on its first attempt by Mr. Tackett's stepfather and resident of that address that Mr. Tackett was out of the country indefinitely. [*Id*. at ¶ 12] Petitioner relies on the *Williams* court's finding of due diligence to allow substitute service. [*Id*. at ¶ 18] In that case, the defendants: 1) attempted to contact the target of the subpoena informally on five occasions without success; 2) retained a third-party process server to locate and attempt service at two residences associated with the target, one of which had a vehicle registered to the target in the driveway; and 3) conducted research to determine the target's place of employment, which became the desired service location for its substituted service motion. *Williams*, 2019 WL 13473875 at *1.

Here, Petitioner's efforts to serve Mr. Tackett fall short of those in *Williams*. Importantly, Petitioner has not demonstrated that it employed efforts to locate Mr. Tackett beyond the single address on which it attempted service. In the context of Federal Rule of Civil Procedure 4, which governs service of process for summons, Colorado courts have found that due diligence is not satisfied by attempts at a single address. *See Elide Fire USA, LLC v. Auto Fire Guard, LLC*, No. 21-cv-00943-NYW,

2021 WL 4947287, at *4 (D. Colo. Sept. 14, 2021) ("Although service was apparently attempted multiple times at this address, this is nevertheless insufficient to demonstrate due diligence [when] [i]t does not appear that Plaintiff has attempted to serve [the defendant] at any other address"); *Allstate Ins. Co. v. Cruz*, No. 20-cv-03139-DDD-MEH, 2020 WL 7421389, at *2 (D. Colo. Nov. 18, 2020) ("Allstate's apparent attempts to serve Mr. Cruz at only one residential address also do not warrant the somewhat extraordinary measure of allowing [alternate] service."). In contrast, courts generally find that the due diligence requirement is satisfied when a party has made multiple attempts at service at multiple addresses. *See, e.g., BMO Harris Bank N.A. v. Marjanovic*, No. 19-cv-02945-CMA-KMT, 2020 WL 4705294, at *1 (D. Colo. Aug. 13, 2020) (plaintiff employed due diligence by attempting service at four different addresses); *Malone v. Highway Star Logistics, Inc.*, No. 08-cv-01534-RPM-KLM, 2009 WL 2139857, at *2 (D. Colo. July 13, 2009) (due diligence satisfied where personal service was attempted at five different addresses). Here, Petitioner has not provided any evidence that: (1) it attempted to locate Mr. Tackett in Thailand, or (2) attempted service pursuant to Rule 45(b)(3) and 28 U.S.C. §1783 (providing guidance on issuing and serving a subpoena directed to a United States national or resident who is in a foreign country), if appropriate.

Because Petitioner has failed to show more extensive due diligence in locating and serving Mr. Tackett, the Court cannot find that substitute service in this matter is appropriate.

B.   **Substitute Service on Mr. Tackett's Stepfather**

Petitioner claims that service on Mr. Tackett's stepfather is "reasonably calculated to provide Mr. Tackett of actual notice of his deposition subpoena." [#5 at ¶ 19] Petitioner relies on *In re Falcon Air Exp., Inc.*, No. 06-11877-BKC-AJC, 2008 WL 2038799 (Bankr. S.D. Fla. May 8, 2008) to support the assertion that serving a subpoena on the target's family member—living at a residence owned by the target while the target does not reside there—is sufficient to meet the delivery requirement of Rule 45. [*Id.*] In that case, the court found that substitute service was permitted because the subpoena was served on the target's wife at a residence owned by him, a residence which public records identified as his homestead, and although the target did not live there at that time, the substitute service was "reasonably calculated to insure receipt of the subpoena by the witness, as evidenced by the fact that [the target] both timely received the subpoena from his wife, and was able to file a timely motion to quash the subpoena." *In re Falcon Air Exp., Inc.*, 2008 WL 2038799 at *4.

Petitioner in this case does not have the luxury of the same showing. Because Petitioner has been unable to effectuate service, it cannot show that Mr. Tackett has received the subpoena, which contradicts the court's key consideration in *In re Falcon Air Exp.* And Petitioner has not provided any indication that Mr. Tackett's stepfather is in touch with Mr. Tackett beyond knowing that he is indefinitely out of the country, or whether these two individuals have an ongoing relationship. While courts have allowed substitute service on family members in certain circumstances, the operative question is whether such service is reasonably calculated to insure receipt of the subpoena by the

8

relevant witness. Without additional evidence or argument, the Court cannot conclude that Mr. Tackett will receive the subpoena through service on his stepfather in this case.

### C.   Mailing the Subpoena to Mr. Tackett's Residence

Petitioner next claims that mailing the subpoena to Mr. Tackett's residence is reasonably calculated to insure receipt of the subpoena by Mr. Tackett. [*Id*. at ¶ 20] Here, Petitioner relies on *Cordius Tr. v. Kummerfeld*, No. 99 CIV. 3200 (DLC), 2000 WL 10268 (S.D.N.Y. Jan. 3, 2000) and *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08 CIV. 9116(PGG), 2009 WL 1313259 (S.D.N.Y. May 11, 2009). In *Cordius*, the plaintiff made repeated attempts to serve a subpoena on the target at his place of employment (wherein the process server was informed the target no longer worked there) and at his residence (where the doorman "repeatedly barred the process server from ascertaining whether [the target] was in his apartment"). *Cordius*, 2000 WL 10268 at *1. The plaintiff was able to reach the target of the subpoena at a pre-trial conference, where he submitted to service in his corporate capacity. *Id*. In *JPMorgan Chase Bank*, the court found substitute service by mail permissible because it "reasonably insure[d] actual receipt of the subpoena by the witness . . . [and] comports with due process as it is reasonably calculated . . . to provide [the target] with both notice and an opportunity to present obligations." 2009 WL 1313259 at *3. The court went on to note that such alternate service is appropriate because the target "appears to be aware that [plaintiff] seeks to depose her." *Id*.

The facts of the instant case differ from these cases in an important way. Mr. Tackett is not just away from home temporarily, he is indefinitely out of the country with no specified date of return. [#5 at ¶ 12] Petitioner does not demonstrate how mailing

9

the subpoena to Mr. Tackett's address—which it has already done [see #5-1]—will provide Mr. Tackett with the requisite notice of a subpoena to appear at a deposition (as required by Rule 45 and traditional notions of due process) when Mr. Tackett is currently in Thailand with no specified plans to return to his residence. [#5 at ¶ 12] Without additional evidence or argument, the Court cannot conclude that Mr. Tackett will receive the subpoena through service via mailing it to his residence in Colorado.

### D.    Further Service Attempts on Mr. Tackett

Petitioner lastly claims that given his indefinite travel plans in Thailand, further attempts to serve Mr. Tackett are unlikely to be successful. [*Id*. at ¶ 21] Petitioner's evidence supporting this assertion is deficient. As discussed above, Petitioner has not demonstrated that it employed due diligence to be certain that further attempts to serve Mr. Tackett will be unsuccessful. According to the Motion, it does not appear that Petitioner has attempted to locate Mr. Tackett beyond a single address. [#5 *generally*] Thus, the Court cannot conclude that further attempts to serve Mr. Tackett will be unsuccessful.

### III.    CONCLUSION

Accordingly, the Court finds that service by certified mail to the verified address and leaving the subpoena with Mr. Tackett's stepfather is not a manner which reasonably insures actual receipt by Mr. Tackett. Petitioner's Motion [#5] is therefore **DENIED WITHOUT PREJUDICE** to filing a motion for substitute service that corrects the deficiencies identified herein.

DATED:  February 13, 2025                    BY THE COURT:

                                              s/Scott T. Varholak
                                              Chief United States Magistrate Judge